[L. A. No. 25480.   In Bank.   Oct. 31, 1960.]

BARUCH INVESTMENT CO. (a Corporation), Respondent, v. CALIFORNIA EQUITIES, INC. (a Corporation), Appellant.

Nichols, Miller & Hodge, Richard E. Hodge and Christopher Hall for Appellant.

Mitchell & Gold and Seymour Gold for Respondent.

SCHAUER, J.—Plaintiff brought this action seeking recovery of a fund of $9,875.25 held in escrow by defendant Bank of Belmont Shore, hereinafter called the bank, to which fund defendant California Equities, Inc., hereinafter called

defendant, also lays claim. Judgment went for plaintiff, and defendant appeals. We have concluded that the trial court correctly held for plaintiff and that judgment should be affirmed.

Both plaintiff and defendant are in the business of factoring accounts receivable. The chronology of events leading up to this litigation is as follows:

February 7, 1955. Defendant entered into a written factoring agreement with Modern Crane and Conveyor Company, Inc., hereinafter called Crane. Under this agreement Crane agreed to sell and defendant agreed to buy from Crane "at the net face amount of invoices less three (3%) per cent, accounts receivable created by" Crane's sales on such sales "as shall be approved by" defendant, and defendant agreed to "be responsible for payment when the goods have finally been accepted by" Crane's customers.

March 10, 1955. Defendant and Crane filed in the office of the county recorder (Los Angeles), pursuant to the provisions of sections 3017 through 3029 of the Civil Code, a notice of assignment of accounts receivable. The notice had been executed by defendant and Crane on February 7, 1955, was signed by both parties thereto, and recited that they thereby gave notice that Crane, as assignor, "expects to assign, or has assigned, an account or accounts receivable now existing or hereafter arising," to defendant as assignee, and that "the general nature of the business out of which such accounts arise is MANUFACTURING."

July 30, 1955. Crane executed a written assignment to defendant of "certain accounts receivable identified as follows:

"Date of Contract 7-30-55   Contract Number N3883S-16654A
                                          Amount   $98,505.00."

The findings and the evidence show that this "Number N3883S-16654A" was a United States Navy prime contract to supply hydraulic jacks.

Some time prior to November 9, 1955, defendant, according to allegations in its answer, under the terms of its above described assignment from Crane became the owner and assignee of an "indebtedness to" Crane in the sum of $9,704.41 representing the unpaid balance on Invoices Numbers 1737, 1820, and 1824, which invoices were dated as of July and August, 1955, and indicated the delivery to the Navy of certain jacks under the Navy contract. The uncontra-

dicted evidence shows, however, and the trial court found,[1] that no deliveries were actually made under these invoices.

November 9, 1955. Defendant and Crane executed a written release of the February 7, 1955, factoring agreement between them. The release declared that unpaid accounts receivable purchased by defendant from Crane totaled $41,248.28 and included $16,369.66 of purported accounts receivable under the Navy contract. In consideration of the release and as indemnity (required under the terms of the factoring agreement) for payment of the $41,248.28 to defendant, Crane transferred to defendant title to a certain crane and hoist (not otherwise involved in this litigation).

November 11, 1955. Defendant executed, and on November 16, 1955, had recorded a cancellation of the March 10, 1955, notice of assignment of accounts receivable, between itself and Crane. The cancellation declares in part that the notice of assignment theretofore filed by defendant and Crane "is hereby cancelled and is no longer effective." The court found that the November 9 release and the November 11 cancellation notice "were to permit Modern Crane to factor with other Factors."

February 27, 1956. Plaintiff and Crane executed, and on March 5, 1956, filed in the county recorder's office, a notice of assignment of accounts. Concurrently the county recorder issued to plaintiff his certificate that there were no other uncancelled notices of assignment on file, with an exception not here material.

Thereafter Crane sold to plaintiff an indebtedness totaling $9,900,[2] represented by invoices numbered 2073, 2075, and 2083, for hydraulic jacks supplied under the Navy contract. Examination of such invoices and of the "Materiel Inspection and Receiving Report[s]," certified copies of which are included in the record, discloses that the items listed in the three invoices were "inspected . . ., conform to contract, and have been accepted" respectively as follows: Invoice Number

[1]Part of Finding No. 6: "The purported accounts receivables [sic] of CALIFORNIA EQUITIES designated . . . as Invoices Nos. 1737, 1820 and 1824 were fictitious. No deliveries of the merchandise listed had been made to the Navy (the purchaser) nor acknowledged by the Navy. But . . . as to BARUCH's invoices [Nos. 2073, 2075, 2083], the Navy not only acknowledged the invoices and the delivery but actually made payment of the specific invoices, which payment ($9,875.25) is in escrow and is the subject of this action."

[2]The $9,875.25 which is the subject of this action is identified in Finding No. 5 as being this "$9900.00 less discount of ¼ of 1%."

2073, February 23, 1956; Invoice Number 2075, February 28, 1956; and Invoice Number 2083, March 2, 1956. The shipping dates for the items under such invoices were for Number 2073, March 16, 1956, and for the other two, March 20, 1956. The Navy received this merchandise and paid to defendant bank $9,875.25 as the discounted full payment of these three invoices. Both plaintiff and defendant claimed the money from the bank, and this litigation followed.

The trial court found and concluded that plaintiff is entitled to the full fund of $9,875.25, that as shown by the evidence such sum had been paid to the bank in payment of the specific three invoices (2073, 2075, 2083) representing the indebtedness purchased by plaintiff, that the invoices (1737, 1820, 1824) which seemingly formed the basis of defendant's claim to the money "were fictitious. No deliveries of the merchandise listed had been made to the Navy (the purchaser) nor acknowledged by the Navy."[3] The court further found that defendant "did release, cancel, surrender and waive any and all his [sic] rights of claims sold and assigned by . . . [Crane] to the defendant and which may have affected or related to the claims purchased from . . . [Crane] by the plaintiff." Accordingly, judgment went for plaintiff.

Defendant, as grounds for reversal, argues that despite the recorded notice of cancellation of assignment of accounts receivable, it is entitled to priority over plaintiff to the fund here in dispute. However, such fund was admittedly paid to the bank for material supplied by Crane under the Navy contract some four months *after* the cancellation notice had been recorded,[4] and represents an indebtedness which defendant had not at any time purchased; it was, indeed, as shown above, an indebtedness which by the terms of the Navy contract did not come into existence until the items to be sold had been manufactured by Crane and accepted by the Navy.

Moreover, in defendant's brief seven of the Navy contract invoices are set forth showing an alleged total Navy indebted-

---

[3]See footnote 1, *supra.*

[4]The finding relative to the sale and assignment of Invoices Numbers 2073, 2075 and 2083 is in essential part as follows: "That pursuant to said notice of assignment [hereinabove described], Modern Crane & Conveyor Co. . . . sold and assigned to . . . plaintiff . . . the following indebtedness to Modern Crane & Conveyor Co., Inc., from U.S.N. Aviation Supply Office," followed by a statement of the quantity and description of items and prices included, respectively, in the above-mentioned three invoices.

ness of $37,620 purportedly purchased by defendant from Crane prior to the cancellation notice. Three of such invoices are, however, those expressly found by the court to be fictitious and to have represented no deliveries of merchandise to the Navy. This finding is directly supported by testimony of a representative of the Inspector of Navy Materiel. These three invoices totaled $12,870, which when subtracted from the total indebtedness claimed by defendant leaves only $24,750 as possibly actually owing to defendant from the Navy. Since the evidence shows, and defendant in its brief relates, payment to defendant by the Navy of $27,915.59, it follows that nothing further was owing to defendant by the Navy, and that regardless of other considerations defendant is entitled to no part of the $9,875.25 paid by the Navy to the bank in full of the three invoices representing the indebtedness purchased by plaintiff. On the record presented it appears that defendant did not purchase such indebtedness, that it advanced no money in reliance upon it, that plaintiff did purchase it, and that the trial court correctly held that plaintiff is entitled to the money therefor paid to the bank by the Navy.

In other words, the whole tenor of defendant's argument and brief seems to be that the issue on this appeal is that of priority as between two factors who purchased the same indebtedness. As already stated, however, the evidence and the findings establish that plaintiff did, and defendant did *not*, purchase the indebtedness in payment of which the funds in dispute were deposited with, and are now held by, the bank.

The appeal in this case approaches, if it does not reach, the character of frivolousness. The contention on behalf of defendant-appellant that disposition of the case depends on resolution of an issue of law relating to priority of assignments is not sustained by the record. Inspection of the record discloses that the judgment appealed from is required by the facts found and that the evidence supporting the findings is substantially uncontradicted. The substance of defendant's factoring agreement with Crane is embodied in the words ''Seller will sell and Factor will buy from Seller at the net face amount of invoices less three (3%) per cent, accounts receivable created by Seller's sales.'' By the terms of Crane's contract with the Navy there could be no ''accounts receivable created by Seller's sales'' until the contracted items had been manufactured by Crane and inspected and accepted by the Navy. Defendant's claim to the money here involved is com-

pletely devoid of merit because it is essentially based on fictitious invoices (Nos. 1737, 1820 and 1824) as to which the witness Linden (who was Director of Contract Control with the office of the Inspector of Navy Materiel, Los Angeles) testified that "Invoice Nos. 1737, . . . 1820, and 1824 were returned [to Crane], stating records of this activity indicate that nothing has been shipped . . . ."

Even if we assume (as intimated at the trial by counsel for defendant) that defendant has been the victim of a fraudulent act by someone representing Crane, it does not follow that plaintiff should bear the loss, if any. The statement made by counsel for defendant during oral argument before this court, in response to questions from the bench, that the trial court found specifically that defendant did purchase the subject indebtedness and that there is no evidence in the record that it did not, is not justified by the record and should not have been made. The attention of counsel is directed to subdivision (d) of section 6068, Business and Professions Code.

The judgment is affirmed.

Gibson, C. J., Traynor J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.